UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| DENNIS STEVENS, et al., | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) Civil No. 04-89-B-W |
| | ) |
| CEDARAPIDS, INC., et al., | ) |
| | ) |
| Defendants | ) |

**RECOMMENDED DECISION ON PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT (DOCKET NO. 48)
AGAINST DEFENDANT CEDARAPIDS, INC.
AND ORDERS ON
CEDARAPIDS'S MOTION FOR LEAVE TO FILE SURREPLY
(DOCKET NO. 70) AND PLAINTIFFS' OBJECTION TO
CEDARAPIDS'S REPLY STATEMENT OF FACT (DOCKET NO. 68)**

Dennis Stevens was injured while performing maintenance work for his employer on a rollercone rock crusher allegedly manufactured/sold by the companies named as defendants. Stevens and his wife, Joan Stevens, have brought a five-count complaint against the sellers/manufacturer alleging strict product liability, breach of warranty, and other causes of action. Dennis and Joan Stevens have now moved for partial summary judgment against certain of Cedarapids, Inc.'s affirmative defenses, claiming that Cedarapids has failed to identify any facts in support of these defenses. (Docket No. 48.) I now recommend that the court grant the motion in part, but deny the motion as relates to the affirmative defense of comparative negligence. I also deny Cedarapids's motion for leave to file a surreply (Docket. No. 70)[1] and strike the Stevenses' objections to

---

[1] See infra note 4.

Cedarapids's and ESI's responsive statements of material fact because such a pleading is not permitted under the local rules and is entirely gratuitous (Docket No. 68).[2]

## Statement of Material Facts

Dennis Stevens was injured in the course of his employment for Thomas DiCenzo, Inc. on April 1, 2002, when a hydraulic coupler and assembly on a rock crusher machine malfunctioned and exploded. (Pls.' SMF ¶ 1.)[3] The hydraulic coupler and assembly had been installed as a replacement part on the rock crusher machine that same day by two employees of Thomas DiCenzo, Inc. (Id. ¶ 2.) Thomas DiCenzo, Inc. says the hydraulic coupler and assembly were ordered by Thomas DiCenzo, Inc. from Defendant ESI. ESI, in turn, ordered the hydraulic coupler and assembly from its manufacturer, Cedarapids, Inc., which shipped the product directly to Thomas DiCenzo,

---

[2] The Stevenses' objection to the responsive statement of material fact is a paragraph by paragraph response/objection based almost entirely on the fact that Cedarapids's responsive statement fails to contain record support. Not only is this "objection" pleading not permitted under the local rules, the Court is completely capable of identifying this shortfall on the part of Cedarapids. See Loc. R. 56(f) ("The court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment."). Neither ESI nor Cedarapids chose to file a statement of additional material facts so the Stevenses had no reason under the Local Rule to file a reply statement of material fact. Local Rule 56(d) clearly so limits the reply statement of material facts: "A party replying to the opposition to a motion for summary judgment shall submit with its reply (memorandum) a separate, short, and concise statement of material facts which shall be limited to any additional facts submitted by the opposing party." To the extent the Stevenses seek to press their hearsay objections to the expert reports -- a purported "record citation" used by Cedarapids in its denials/qualifications -- they were free to do so in their reply memorandum, as they did. (See Docket No. 66.) The Stevenses, as the moving parties, are entitled to the last word on this motion and by filing this pleading called "an objection" they simply invited the additional pleadings filed by Cedarapids. Local Rule 56(e) procedure only contemplates the situation where a party is filing a response to a moving party's statement of material fact or a nonmoving party's statement of additional material facts. The rule allows the exceptional circumstance of allowing a nonmoving party to respond to a request to strike "if the request was made in a reply statement of material facts," by filing a response within 11 days. The Stevenses' "objection" to the responses to its own statement of material fact is not sanctioned by the rule. The Stevenses filed a properly supported statement of material fact and the defendants responded and attempted to deny or qualify those facts, but did not assert that the facts should be stricken on any evidentiary ground. To the extent Cedarapids attempted to assert argumentative conclusions regarding discovery disputes or other nonfactual assertions into their denials/qualifications, the Stevenses were permitted to file a reply memorandum addressing those arguments. That should have been the end of the pleadings on these motions.

[3] Cedarapids attempts to qualify this statement by stating it does not admit that the rock crusher machine "malfunctioned" or that the machine "exploded." (Def.'s Resp. SMF ¶ 2.) It provides no citation and I deem these facts admitted for purposes of this motion. Cedarapids's failure to provide record citations for many of its "qualifications" has led to the same result throughout my recitation of the "facts."

Inc. (Id. ¶¶ 3-4.) ESI and Cedarapids attempt to dispute this fact by asserting that it is unknown whether or not the parts ordered by Thomas DiCenzo, Inc. from ESI -- who then ordered the parts from Cedarapids and had them shipped directly to Thomas DiCenzo, Inc. -- were the same as those which were installed on the date of Dennis Stevens's accident.  Cedarapids, Inc. is not aware of whether it manufactured the product at issue in this litigation or whether the product is, in any way, related to Cedarapids, Inc. Cedarapids, Inc. manufactured, or caused to be manufactured, part number 02-450-116-0000, the part type or model which the Stevenses assert was defective in this litigation, and shipped several of this part type to Thomas DiCenzo, Inc. in 2001 and 2002. However, it is not clear whether any of the parts shipped by Cedarapids, Inc. to Thomas DiCenzo, Inc. were actually the allegedly defective part involved in this injury.  It is possible that, Cedarapids contends, the allegedly defective part could have been a "reverse-engineered" part manufactured by another entity other than Cedarapids, Inc. (Def.'s Resp. SMF ¶ 3.)

The Stevenses maintain that Cedarapids has not identified any information to support its affirmative defense that the amended complaint is barred based on Dennis Stevens's comparative or contributory negligence.  (Pls.' SMF ¶ 5.)   Cedarapids asserts there is sufficient evidence on the record in this case that Dennis Stevens's comparative or contributory negligence may have played a role in this case.  Dennis was crawling around on the rock crushing machine at issue in an attempt to clean up spilled oil while the machine was being pressurized up to 2600 pounds per square inch.  According to Cedarapids there is a material issue of fact as to whether or not a jury could conclude that

this behavior constitutes negligence on the part of Dennis Stevens. (Def.'s Resp. SMF ¶ 5.)

According to the Stevenses, Cedarapids has not identified any information to support its affirmative defense that the Stevenses' damages were caused by the superceding, unforeseeable conduct of other parties, over whom Cedarapids has no control. (Pls.' SMF ¶ 6.) Cedarapids's experts in this case have opined[4] that the accident may have been caused by incorrect seating of the ferrule inside the elbow joint. This incorrect seating, to the extent it existed, could have been caused by a large dent on the threading of the elbow, with a corresponding witness mark on the ferrule which slides into the elbow. The individuals who were working on the machine on the date of Dennis Stevens's accident have admitted to using various wrenches and a large, thirty-pound sledgehammer during their work that day. According to Cedarapids, there is a material issue of fact as to whether or not a jury could conclude that the large dent on the elbow was, or may have been, caused by these individuals working on the joint at issue and that this dent could have caused the accident. Furthermore, because it is not completely clear

---

[4] A contretemps in this summary judgment record erupts at this point. The Stevenses correctly point out that expert reports are hearsay. Cedarapids simply cites to those reports for its record citation in support of these facts. In a surreply pleading Cedarapids asserts, that at the time it filed its objections to the motion for partial summary judgment, deposition transcripts of the experts deposed in early December were not yet available to the parties. Cedarapids supplements its earlier response by citing to pages 19 through 25 of the deposition transcript of Dennis Deegan wherein Deegan discusses his "incorrect seating" analysis, which allegedly supports Cedarapids's affirmative defense that Dennis Stevens's injuries were caused by an intervening or superceding cause. That deposition testimony only came to be filed with the court as an attachment to the Stevenses' reply memorandum to Cedarapids's response to the motion for partial summary judgment. (Docket No. 66.) The Stevenses had no real reason to file these exhibits as they are not in support of any of their statements of fact. The deposition testimony was not provided by Cedarapids. The Stevenses filed an objection (Docket No. 68) to Cedarapids's responsive statement of fact, interposing this hearsay objection. Cedarapids responded to that objection with two pleadings: A "Reply to Additional Statement of Fact/Objection" (Docket No. 69) which was accompanied by a "Motion for Leave to File Surreply Memorandum." Cedarapids has never offered a statement of additional material facts setting forth the facts supporting its enumerated affirmative defenses. Had it done so, with appropriate record citations, this record would be much easier to parse. I now deny the motion for leave to file surreply (Docket No 70), but the Deegan testimony is part of the summary judgment record which I have reviewed because both parties have squarely placed it in front of the court, although not in accordance with any procedure that complies with Local Rule 56.

4

that the manifold at issue in this case and its allegedly defective threading were manufactured by Cedarapids or another party, there is a material issue of fact as to whether or not a jury could conclude that the part could have been made by another entity, who was negligent in manufacturing the part. (Def.'s Resp. SMF ¶ 6.)

Cedarapids has not identified any information to support its affirmative defense that Dennis Stevens's injuries and damages were the result of intervening and superceding causes or the negligence or other fault of a third party. (Pls.' SMF ¶ 7.) It has not identified any information to support its affirmative defense that Cedarapids may be entitled to contribution/indemnification from another person or entity. (Id. ¶ 8.) Cedarapids has not identified any information to support its affirmative defense that these claims are barred or affected by spoliation of evidence. (Id. ¶ 9.) Cedarapids does not provide record citation to admissible evidence, although it purports to deny all three. Cedarapids responds to the spoliation statement in Paragraph 9 with, inter alia, the following dissertation, supported only by the plaintiffs' rebuttal expert reports. (Predictably, the Stevenses object on a hearsay basis.)

> **Denied**. . . Plaintiffs' expert liability witnesses, Dr. Pesuit and Mr. Schnall, have indicated in their expert reports in this case that they have conducted many tests of the parts in this litigation, including removing metal from the parts in order to conduct "hardness" studies and, more importantly, placing the ferrule involved in this accident inside the accident elbow and placing pressure on the two parts by tightening the outside nut with a wrench. See Dr. Pesuit and Mr. Schnall's "rebuttal" report attached hereto as Exhibits D1 and D2. These tests were performed with no notice being provided to Cedarapids. As Plaintiffs' liability theory in this case is based on thread diameter measurements, which are made to the thousandth of the inch, and both the hardness measurements and compression testing may have altered the evidence in this case or, more specifically, changed the thread diameter measurements of the ferrule involved in this litigation, such invasive testing could have destroyed or limited the evidentiary value of the evidence, and, therefore could lead to a spoliation issue.

(Def.'s Resp. SMF ¶ 9.)

5

In Paragraphs 10 through 13 of their statement of material facts, the Stevenses supply a critique of Cedarapids's responses to interrogatory requests. (Pls.' SMF ¶¶ 10-13.) Cedarapids responds to these paragraphs (Def.'s Resp. SMF ¶¶ 10 -13) by noting "discovery responses speak for themselves." According to the Stevenses, they propounded interrogatories to Cedarapids seeking, inter alia, all facts upon which Cedarapids relied in support of each of its affirmative defenses. As to each such interrogatory, Cedarapids responded on January 27, 2005, as follows:

> Objection. This interrogatory calls for information which is protected by the attorney-client privilege and/or the work product doctrine. Defendant further objects that the 'product' in this litigation has yet to be definitively identified, and reserves the right to supplement this response once it has inspected the product. Defendant also objects on the grounds that this Interrogatory calls for application of law to fact.

(Def.'s Resp. to Pls.' Interrogs. ¶¶ 24-29; Pls.' SMF ¶ 10.) On July 5, 2005, Cedarapids supplemented its responses to the Stevenses' interrogatories. As to each of the interrogatories seeking facts supporting Cedarapids's affirmative defenses, Cedarapids repeated its objections as set forth above and added: "See responses to Interrogatories 9 and 10." (Def.'s Supp. Resp. to Pls.' Interrogs. ¶¶ 24-29; Pls.' SMF ¶ 11.)

Interrogatory 9 and Cedarapids' supplemental response thereto, were as follows:

> Did you manufacture the hydraulic coupler and assembly (hereinafter referred to as the "product")? If so, state the date and place of manufacture, the date you sold or otherwise distributed the product, and the name and address of the person or entity that purchased the product from you. If you did not manufacture the product, state the name and address of the person, firm or entity who did so.
>
> Response: Objection. It is unclear whether Plaintiffs intend the term "product" to refer to the rock crushing machine, the five-part assembly in Plaintiffs' expert's possession, or the specific manifold part which Plaintiffs' expert alleges was defective. Without waiving this objection, Defendant is not aware of whether it manufactured the "hydraulic coupler and assembly" allegedly at issue in this litigation, or whether this

6

> "product" is, in any way, related to Defendant. Defendant sold the rock crusher in question, which was shipped to Terra Equipment on July 11, 1978. Following an inspection of those five parts currently in the possession of Plaintiffs' experts which allegedly failed in this case, and a review of all relevant documents in Defendant's possession, it appears that Defendant manufactured, or caused to be manufactured, part number 02-450-116-0000, the part type which Plaintiffs' expert believes was defective in this matter, and direct shipped three of the part type to Thomas DiCenzo, Inc. on April 24, 2001, April 30, 2001 and April 2, 2002. It is not clear whether any of these three parts were the actual part which was allegedly defective. It is possible that the parts sent in April 2001 were "reverse engineered" and a new part was created, not manufactured by Defendant. The relevant invoices have already been provided to counsel in this matter. The parts were billed to Equipment & Systems for Industry, Inc.

(Def.'s Supp. Resp. to Pls.' Interrogs. ¶ 9; Pls.' SMF ¶ 12.)

Interrogatory 10 and Cedarapids's supplemental response thereto, were as follows:

> State the name and address of any person, firm or entity that did the following with respect to the product: (a) designed it; (b) manufactured it; (c) assembled it; or (d) distributed it through sale or otherwise.
> Response: See response to interrogatory number 9. By way of further answer, Louis Johnson is the inventor/creator of the rock crushing machine at issue in this litigation, although he utilized components designed by entities such as Parker-Hannifin and Weatherhead in the machine, particularly for the joint and the threaded connection at issue in this litigation. The manufacturer of the nut, ferrule and elbow at issue in this litigation was either Parker-Hannifin or Weatherhead. Mr. Johnson sold the El-Jay line in 1975 and it was sold again in 1976 to Cedarapids, Inc. It is unclear whether the "manifold" at issue in this litigation (part number 02-450-116-0000) was actually manufactured by Defendant, although Defendant does manufacture such manifolds. Defendant has no knowledge as to who may have placed the allegedly defective manifold onto the rock crushing machine.

(Def.'s Supp. Resp. to Pls.' Interrogs. ¶¶ 10; Pls.' SMF ¶ 13.)

### *Summary Judgment Standard*

As moving parties the Stevenses must demonstrate an absence of evidence to support the nonmoving party's case. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). I must view the record in the light most favorable to Cedarapids and give it the

7

benefit of all reasonable inferences in its favor. Santoni v. Potter, 369 F.3d 594, 598 (1st Cir. 2004). Once the Stevenses have made a preliminary showing that no genuine issue of material fact exists, Cedarapids must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue." Triangle Trading Co. v. Robroy Indus., Inc., 200 F.3d 1, 2 (1st Cir. 1999) (citation and internal punctuation omitted). See also Fed. R. Civ. P. 56(e). "As to any essential factual element of its claim on which [Cedarapids] would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party." In re Spigel, 260 F.3d 27, 31 (1st Cir. 2001) (citation and internal punctuation omitted).

### *Discussion*

The Stevenses seek summary judgment on six affirmative defenses asserted by Cedarapids: Plaintiffs have failed to state a claim upon which relief can be granted; the Amended Complaint is barred based on the Plaintiffs' comparative or contributory negligence; the Plaintiffs' damages were caused by the superceding unforeseeable conduct of other parties, over whom Defendant has no control; the Plaintiffs' injuries and damages were the result of intervening and superceding causes, or the negligence or other fault of a third party; Defendant may be entitled to contribution/indemnification from another person or entity; and the Plaintiffs' claims are barred or affected by spoliation of evidence. The defendant bears the burden of proving its affirmative defenses. See Nightingale v. Leach, 842 A.2d 1277, 1279 (Me. 2004). As to each of these six affirmative defenses the Stevenses have put forth record evidence to meet the preliminary burden of demonstrating that no genuine issue of material fact exists. Thus, it is

Cedarapids's burden to come forward with sufficient evidence to generate a trialworthy issue.

As a preliminary matter there is a great deal of sparring in this motion and the related pleadings over the status of certain discovery requests and responses. A motion for summary judgment is a singularly inappropriate venue to air discovery disputes. The Stevenses complain about Cedarapids's belated assertion of certain of the "facts" in support of the affirmative defenses because of the manner in which they answered their earlier interrogatories. Because the only "facts" I find to have been put forth here relate to the comparative negligence interrogatory, I conclude that any failure to fully and completely respond to the discovery request is harmless in any event. This is true whether or not, as a result of discovery conferences, Cedarapids was under an obligation to supplement those interrogatory answers with a more complete statement. Those arguments do little to resolve the issue of whether or not Cedarapids has come forward <u>in this summary judgment record</u> with sufficient evidence to sustain its burden as to these individually enumerated affirmative defenses.

I also note, as to the affirmative defenses relating to causation and third party fault, this motion is especially frustrating because at trial, of course, the Stevenses will bear the burden of proof of proving causation in the first instance. If they do not prove that the injury-causing part came from Cedarapids ... the trial will be over. If they do not prove that the part was defective under the product liability count ... the trial will be over. Nothing in this motion practice should render the fully disclosed opinions of Cedarapids's experts inadmissible at trial. Thus while granting partial summary judgment to the Stevenses on these affirmative defenses serves to effectively bar the defendants from

obtaining jury instructions on supervening and independent causation issues -- with the attendant foreseeability issues -- it does nothing to change the evidence that might be admitted at trial nor does it change the court's jury instruction regarding causation in the first instance. With those limitations in mind, I will address each of the affirmative defenses.

### 1. *Failure to State a Claim*

The parameters of this "affirmative defense" are not clear and nothing in the parties' memoranda clarify the question. In fact Cedarapids ignores this claim, limiting itself to the five traditional affirmative defenses listed above. The Stevenses are entitled to judgment as a matter of law on this affirmative defense.

### 2. *Comparative Fault*

Cedarapids supports its denial of the Stevenses' claim that it has identified no evidence in support of the assertion that Dennis Stevens's own negligence contributed to his injuries with the deposition testimony of Peter Drew. Drew testified that Dennis was crawling around on the rock crushing machine at the same time the machine was being pressurized up to 2600 pounds per square inch. Cedarapids argues, based on these facts, that a factfinder could conclude that Dennis's own conduct constituted negligence. The Stevenses argue that since no expert has been designated to testify that it is dangerous or negligent to work in the area where Dennis was working the defense fails as a matter of law. They cite no authority for the proposition that an expert, rather than the jury, should be required to make the determination of whether Dennis had any causative fault for his own injuries. Most commonly the question of comparative negligence in circumstances such as this is a question of fact to be decided by the jury. See Souza v. Bangor Hydro-

Elec. Co., 391 A.2d 349, 353 (Me. 1978). I see no reason, at this juncture, to depart from that general rule given this summary judgment record. The plaintiffs can, of course, renew this request by making a motion for a directed verdict after the evidence has been presented.

### 3. & 4.   *Superceding and/or Intervening Fault, Conduct, or Causation*

Cedarapids presents three separate "theories" under this heading, which it captions in its memorandum as intervening "fault" and which appears to encompass affirmative defenses labeled "C" and "D" in its amended answer, incorporating the concepts of superceding unforeseeable conduct of other parties, superceding causation, and third party fault or negligence. First, it argues, that Dennis Stevens's own comparative negligence is a superceding "fault" in this case to be considered by the jury. I have already discussed the comparative negligence issue. That affirmative defense does not get a double billing justifying an instruction on superceding or intervening causation or an independent intervening event excusing the defendant's liability. Such an instruction would do nothing more than confuse the jury. Cedarapids points to no fact that would support the conclusion that Dennis's alleged negligence in working around a defective part was other than the ordinary foreseeable negligence of a careless worker.

Cedarapids's other two theories fit under this heading a little better. One theory depends upon the expert opinions relating to a possible incorrect seating of a ferrule inside an elbow joint that might have occurred as a result of the conduct of individuals working on the machine on the day of the accident. The final theory turns upon the assertion that it could have been some other entity that manufactured the defective manifold.

11

As to this latter theory Cedarapids has pointed to no evidence, admissible or otherwise, that supports its hypothesis that the part was not the part furnished by ESI and obtained from Cedarapids. It cites to its own interrogatory answers wherein it says that it is "not aware" of whether it manufactured the product at issue. The relative state of the corporate officers' awareness at Cedarapids does not give rise to a factual basis supporting an assertion that an unknown third party is at fault. Clearly the Stevenses will have to produce sufficient evidence to convince the factfinder the allegedly defective part was the part provided by Cedarapids. There is no factual basis for any "affirmative defense" under this theory raised by this record.

The closest Cedarapids comes to raising a recognizable affirmative defense is the opinion offered by its experts, that the reason for this accident was the conduct of third parties who caused the incorrect seating inside the elbow joint. As I indicated in reciting the statement of facts underlying this motion, the Stevenses object to the hearsay reports of the experts cited as record support for these facts. In order to prevail on this affirmative defense it is Cedarapids's burden to prove an independent intervening event that excuses its liability. However, the mere occurrence of an intervening cause does not automatically break the chain of causation stemming from the original actor's conduct -- bear in mind that affirmative defenses only arise if the Stevenses have first established that the product was defectively designed or defendant was negligent and caused the injuries -- the intervening cause must also be a superceding cause, that is, neither anticipated nor reasonably foreseeable. See Ames v. Dipietro-Kay Corp., 617 A.2d 559, 561 (Me. 1992). Given the previously discussed evidentiary issues surrounding the summary judgment presentation of these facts, coupled with the fact that Cedarapids'

memorandum does not even begin to discuss the legal parameters of this affirmative defense, I am satisfied that the Stevenses' motion should be granted as to this collection of affirmative defenses because Cedarapids has failed to properly present and preserve the issues in response to this summary judgment motion.

### 5. *Contribution and Indemnification*

Of course Cedarapids retains its right to seek indemnification in a subsequent lawsuit from any party who is a joint tortfeasor, with the exception of ESI. In an unrelated summary judgment motion I have recommended the court grant ESI's motion for summary judgment against Cedarapids on the issue of indemnification. Because there are no other parties to this litigation and because indemnification has nothing to do with the Stevenses, I do not see that this "affirmative defense" goes anywhere.

### 6. *Spoliation of evidence*

The spoliation inference permits the trier of fact to "infer from a party's obliteration of a document [or tangible object] relevant to a litigated issue that the contents of the document [or tangible object] were unfavorable to that party." Testa v. Wal-Mart Stores, Inc., 144 F.3d 173, 177 (1st Cir. 1998). The party asserting the inference must produce evidence that the other party "knew of (a) the claim (that is, the litigation or the potential for litigation), and (b) the document's [or tangible object's] potential relevance to that claim." Id. As I understand the spoliation argument that Cedarapids is attempting to raise, it has nothing to do with failure to preserve evidence. Rather Cedarapids is arguing that tests performed by plaintiffs' experts may have altered the evidence in some fashion. Presumably defense experts had a full opportunity to examine the evidence before the thread diameter measurement damaging intrusive tests

13

took place. I draw this conclusion because the Stevenses' counsel says that is so in their memorandum and because Cedarapids relies, without explication, upon the expert <u>rebuttal</u> reports prepared by plaintiffs' experts in support of this affirmative defense, not because I have any facts presented in a summary judgment record. If Cedarapids really wanted the court to consider this a viable affirmative defense one would assume that it would have provided the court with some facts upon which it could make a determination as to whether the Stevenses' experts had destroyed evidence through testing and whether that destruction would in some manner prejudice Cedarapids's experts in their presentation. It has presented no such facts.

### *Conclusion*

For the reasons stated above I recommend that the court **GRANT** this motion for summary judgment (Docket No. 48) as to all of the affirmative defenses except for the claim of comparative negligence. I also **DENY** Cedarapids's motion for leave to file a surreply (Docket No. 70) and **STRIKE** the Stevenses' objection to Cedarapids's reply statement of material fact (Docket No. 68).

### NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within ten (10) days of being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

February 17, 2006.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge